Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 278512)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

John R. Habashy (SBN 236708)
Tiffany N. Budda (SBN 232679)
**LEXICON LAW**
633 W. 5th Street, 28th Floor
Los Angeles, CA 90071
Telephone:   (877) 529-5090
Facsimile:    (888) 373-2107

*Attorney for Plaintiff and the putative class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL ONTIVEROS, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>2005 RESIDENTIAL TRUST 3-2; FCI LENDER SERVICES, INC.; BANK OF AMERICA, NATIONAL ASSOCIATION DBA COUNTRYWIDE BANK, FSB;and DOES 1-10, inclusive<br><br>　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Abel Ontiveros ("Plaintiff" or "Mr. Ontiveros"), on behalf of himself and all others similarly situated, by way of a Class Action Complaint against Defendants Bank of America, National Association dba Countrywide Bank, FSB; 2005 Residential Trust 3-2; and FCI Lender Services, Inc. (collectively, "Defendants"), based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, hereby alleges as follows:

## SUMMARY OF THE ACTION

1.      In this action, Plaintiff seeks to represent himself and all other similarly situated consumers affected by Defendants' improper conduct in servicing closed-end mortgage loans, (the "Class") in violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. (the "Act"); its implementing regulations, Federal Reserve Board Regulation Z, 12 C.F.R. § 226 *et seq.* ("Regulation Z") (collectively, "TILA"); and for violations of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, *et seq.*, prohibiting debt collectors from engaging in abusive, deceptive, and unfair practices.

2.      Defendants are the holders, assignees and/or servicers of a second mortgage on Plaintiff's home.  The second mortgage is a closed-end consumer credit transaction secured by a dwelling – i.e., a closed-end mortgage loan – and, thus, Defendants' servicing of the second mortgage must comply with TILA.

3.      Among other things, TILA requires servicers, such as Defendants, to send mortgage borrowers, such as Plaintiff, a periodic statement each billing cycle containing certain information about their loans.  A servicer is permitted to stop sending such periodic statements for loans that have been "charged off."  However, if the servicer subsequently stops treating the loan as "charged off," or otherwise purports to charge any fees or interest, the servicer must immediately resume sending periodic statements.  Meanwhile, TILA expressly prohibits servicers from retroactively assessing fees or interest for periods during which the servicer was not sending periodic statements.

**CLASS ACTION COMPLAINT**

4.     After financial hardship caused Plaintiff to fall behind on his mortgage payments, Defendants notified him that the loan was being "charged off" and subsequently stopped sending him periodic statements or any other correspondence regarding the loan.    Approximately <u>five</u> <u>years</u> then passed without any communication between the parties.

5.     After nearly <u>five</u> <u>years</u> of silence, Defendants began sending Plaintiff billing statements purporting to retroactively assess late fees and interest charges against him for the preceding five-year period, during which Defendants had not sent him any periodic statements regarding the ostensibly "charged off" loan.

6.     Defendants' conduct violates TILA in that: (a) their billing statements constitute unlawful attempts to retroactively assess fees and interest against Plaintiff for the five-year period during which they did not send Plaintiff any periodic statements in violation of TILA; or, in the alternative, (b) Defendants' failure to send Plaintiff periodic statement each billing cycle, while still purporting to assess fees and interest on his account, constituted a separate violation of TILA each billing cycle that passed for nearly five-years straight.

7.     On information and belief, Defendants' normal business practice is to retroactively assess fees and interest charges for earlier billing cycles during which no periodic statement was sent to the borrower.    On information and belief, Defendants sent Plaintiff the unlawful biling statement, and sent similarly unlawful billing statements to the other Class members, in accordance with this normal business practice.

8.     Defendants' retroactive assessments result in overstatements of the amount of interest consumers owe on their accounts.    But many borrowers are unaware of the illegality of Defendants' retroactive assessments and are induced by Defendants to pay the overcharges without contest.    Defendants' violations of TILA directly harm Class members by depriving them of the excess funds they expend on

the illegal fees and interest charges. Rather than refund Class members' overpayments, Defendants retain the overpayments as ill-gotten gains.

9. Defendants are sophisticated companies and are aware that their retroactive assessments are unlawful. Clearly, Defendants have concluded that the ill-gotten revenue they receive from borrowers who do not challenge the unlawful assessments sufficiently exceeds the potential costs Defendants might incur as a result of their unlawful activity. Defendants have made a calculated business decision to systematically and routinely violate TILA and it has become their normal business practice.

10. Plaintiff brings this class action on behalf of himself and a class of all others similary situated to stop and deter Defendants' misconduct, seeking an injunction stopping Defendants from sending statements that purport to retroactively charge borrowers for charge-off periods and/or failing to send periodic statements as required by TILA, and to seek redress for Defendants' past wrongdoing, seeking an award of statutory damages, together with costs and reasonable attorneys' fees by reason of Defendants' violations of TILA, 15 U.S.C. § 1638, and 12 C.F.R. § 1026.41.

**PARTIES**

11. Mr. Ontiveros is an individual residing in Ventura County, California, within the jurisdiction of this Court, and is a "debtor" as defined by Cal. Civ. Code §1788.2(h). Mr. Ontiveros is the owner of 2172 Cloyne Street, Oxnard, California 93033 (the "Ontiveros Residence").

12. On information and belief, Defendant Bank of America, National Association dba Countrywide Bank, FSB ("Countrywide"), is a National Association engaged in the business of providing lending and financing for the sale of real property, with adequate contacts within the State of California so as to be within the jurisdiction of this Court. At all times relevant hereto, Countrywide, in the ordinary course of its business, regularly  extended or offered to extend

**CLASS ACTION COMPLAINT**

1  consumer credit for which a finance charge is or may be imposed or which, by
2  written agreement, is payable in more than four installments.  Countrywide is a
3  "creditor" and "servicer" of the mortgage loan at issue in this matter within the
4  meaning of the Act, and subject to its requirements 15 U.S.C. § 1602(g) and
5  Regulation Z §§ 226.2(a)(17) and 1026.2(a)(17).  Furthermore, Defendant engaged,
6  through the use of mails and telephone, in the business of collecting a debt from
7  Plaintiff which qualifies as a "consumer debt," as defined by the RFDCPA Cal.
8  Civ. Code §1788.2(c); and regularly attempts to collect debts alleged to be due
9  then, and therefore is a "debt collector" as defined by the RFDCPA Cal. Civ. Code
10 §1788.2(c).

11      13.    On information and belief, Defendant 2005 Residential Trust 3-2
12 ("Residential Trust"), is a Delaware Statutory Trust filed on March 31, 2017
13 (according to public records) engaged in the business of collecting motrgate and
14 interest payments, with adequate contacts within the State of California so as to be
15 within the jurisdiction of this Court.  Residential Trust claims to hold an assignment
16 of the mortgage loan at issue in this matter by virtue of Corporation Assignment of
17 Deed of Trust, executed on or about June 21, 2017. To the extent that Residential
18 Trust holds such an assignment it is an assignee subject to Plaintiffs' claims under
19 the Act by virtue of 15 U.S.C. § 1641(e).  Residential Trust is a "creditor" and
20 "servicer" of the mortgage loan at issue in this matter within the meaning of the
21 Act, and subject to its requirements 15 U.S.C. § 1602(g) and Regulation Z §§
22 226.2(a)(17) and 1026.2(a)(17).

23      14.    On information and belief, defendant FCI Lender Services, Inc.
24 ("FCI") is a corporation engaged in the business of collecting mortgage and interest
25 payments, with adequate contacts within the State of California so as to be within
26 the jurisdiction of this Court.  FCI purports to be the entity entitled to receive
27 scheduled periodic payments from Plaintiff covering the Class Period, pursuant to
28 the terms of the mortgage at issue in this case and responsible for making the

**CLASS ACTION COMPLAINT**

payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts due from Plaintiff as may be required pursuant to the terms of the mortgage. FCI was, at all times relevant to the allegations in this complaint, acting as the agent of Defendant 2005 Residential and as a servicer of of the mortgage loan at issue in this matter, within the meaning of the Act, and subject to its requirements, 15 U.S.C. § 1602(g) and Regulation Z §§ 12 CFR 1024.2 and 1026.41.

15. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned and relevant herein, each and every defendant was the principal, agent, master, servant, co-venturers, employer or employee of each and every other defendant, and at all times relevant herein was acting in such capacity. Plaintiff further alleges that the acts performed by them as agents, principals, servants and employees were performed within the course and scope of their authority and employment. Each of the defendants is in some way responsible for the damages sustained by Plaintiff. When the complaint references any act of any defendant or defendants, such allegation shall be deemed to mean the act of those defendants named in the particular cause of action to which such act pertains and each of them acting, individually, jointly and severally.

16. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## **JURISDICTION AND VENUE**

17. Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by

1    virtue of 28 U.S.C. § 2201.  Furthermore, this Court has supplemental jurisdiction,

2    pursuant to 28 U.S.C. § 1367, over Plaintiff's claims under the Rosenthal Fair Debt

3    Collection Practices Act, Cal. Civ. Code §1788, *et seq.*.

4         18.    Venue is proper in this Court under 28 U.S.C. section 1391(b), because

5    all incidents, events, and occurrences giving rise to this action occurred in, Los

6    Angeles County, California.

7         19.    The Court has personal jurisdiction over Defendants as Defendants

8    conduct business within this district and have purposefully availed themselves of

9    the laws and markets of the state of California and this district.

10                        **TRUTH IN LENDING ACT**

11        20.    The Act was enacted May 29, 1968 as Title I of the Consumer Credit

12   Protection Act, Pub.L. 90–321, 82 Stat. 146.

13        21.    In enacting TILA, Congress found that economic stabilization would

14   be better enhabce and competition would rise among financial institutions if

15   borrowers would be better informed by the use of credit. By providing proper

16   information to consumers, they are able to better make informed decision regarding

17   the use of credit.

18        22.    The Act establishes and explains required disclosures that must be

19   made to consumers, whom undertake the use of credit, and better protect the

20   consumer against inaccurate and unfair billing practices.  The Act introduced the

21   Annual Percentage Rate ("APR") calculation mandated for all consumer lenders.

22   Certain misleading interest rate calculations used previously, mainly on auto loans,

23   were barred.

24        23.    The Act is implemented by various regulations known collectively as

25   "Regulation Z."

26        24.    Initially, the regulations comprising Regulation Z were promulgated

27   by the Federal Reserve Board ("FRB") and codified at 12 C.F.R. 226 *et seq*.

28   However, pursuant to the Dodd Frank Wall Street Reform and Consumer Protection

**CLASS ACTION COMPLAINT**

Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd Frank"), effective July 21, 2011, the Act's general rule making authority was transferred to the Consumer Financial Protection Bureau ("CFPB") and regulations created thereafter are codified at 12 C.F.R. 1026 *et seq.* The CFPB's new regulations attempt to mirror those promulgated by the FRB whenever feasible.

25. Regulation Z is divided into five subparts – A through E – and apply to various types of consumer credit transactions. Several appendices contain information explaining and clarifying the regulations – e.g., identify the procedures for determinations about state laws, state exemptions and issuance of staff interpretations, special rules for certain kinds of credit plans, a list of enforcement agencies, model disclosures which if used properly will ensure compliance with the Act, and the rules for computing annual percentage rates in closed-end credit transactions and total annual loan cost rates for reverse mortgage transactions, etc.

26. In furtherance of Dodd-Frank, congress added certain billing requirements to the Act. Dodd Frank, Pub. L. No. 111-203, § 1420, 124 Stat. 1376 (2010) (codified as amended at 15 U.S.C. § 1638(f)). To that end, Section 1026.41 of Regulation Z sets forth the billing requirements that TILA imposes on servicers of second mortgages, which are liens placed on the subject property that are junior to the liens already placed on the property. .

27. A creditor is defined as "a person who both (1) regularly extends… consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 16202(g)

28. For purposes of this paragraph (c), the terms "servicer" and "servicing" have the same meanings as provided in 12 CFR 1024.2(b). the terms "servicer" and "servicing" have the same meanings as provided in 24 CFR

**CLASS ACTION COMPLAINT**

3500.2(b), as amended.   A servicer (as that term is defined under 12 U.S.C. 2605(i)(2)) . For the purposes of this section, servicer includes the creditor, assignee, or servicer, as applicable. 12 CFR 1026.41

29.   Regulation Z requires that a servicer or mortgagee is required to send periodic statements each billing cycle for any "closed-end consumer credit transaction secured by a dwelling," such as a mortgage loan.   12 C.F.R. § 1026.41(a).the servicer send monthly statements for the accruing of interest.

30.   Pursuant to Regulation Z, servicers can stop sending periodic statements if only if the mortgage loan has been "charged off" and the borrower will not be charged any additional fees or interest.  12 CFR §1026.41(e)(6)(i)(A).

31.   The servicer must also send the borrower within 30 days of the charge-off or last periodic statement, a document clearly labeled "Suspension of Statements & Notice of Charge off - Retain this Copy for your records."  12 CFR §1026.41(e)(6)(i)(B)

32.   However, if the servicer subsequently stops treating the loan as charged-off, or if the servicer otherwise charges any fees or interest, the servicer must immediately resume providing statements.  12 CFR §1026.41(e)(6)(ii)(A)

33.   In addition, the servicer must not retroactively assess fees or interest. 12 CFR §1026.41(e)(6)(ii)(B)

## STATEMENT OF FACTS

### FACTS SPECIFIC TO PLAINTIFF

34.   The Ontiveros Residence has been in the Ontiveros family since 1998, when Mr. Ontiveros' parents acquired title to the property as joint tenants. Mr. Ontiveros has resided in the home since his childhood.

35.   Mr. Ontiveros acquired title to the Ontiveros Residence in 2004.

36.   On or about May 15, 2007, Mr. Ontiveros entered into a consumer credit transaction (hereinafter "the Transaction") with Countrywide in which the

**CLASS ACTION COMPLAINT**

consumer credit extended to Mr. Ontiveros was subject to a finance charge and was initially payable to Countrywide.

37.    A true and accurate copy of the credit agreement evidencing the Transaction is attached hereto, marked **Plaintiff's Exhibit A**, and by this reference is incorporated herein.

38.    As part of the Transaction, Countrywide retained a security interest in the Ontiveros Residence – 2172 Cloyne Street, Oxnard, California 93033.

39.    The security interest was not created to finance the acquisition or initial construction of the Ontiveros Residence.

40.    A true and accurate copy of the mortgage evidencing Countrywide's security interest (the "Second Mortgage") is attached hereto, marked **Plaintiff's Exhibit B**, and by this reference is incorporated herein.

41.    Initially, Countrywide held and serviced the obligation.  It required a monthly payment for principal and interest of $318.70, payable to Countrywide. After completion of the Transaction Mr. Ontiveros made ongoing payments that went toward principal, interest, and finance charges to Countrywide and its subsidiaries.  Countrywide retained the payments its servicer collected from Mr. Ontiveros.

42.    Due to severe financial hardship, Mr. Ontiveros fell behind on the monthly payments due on the Second Mortgage.   Eventually, in or around late March 2010, Mr. Ontiveros stopped making payments on the Second Mortgage altogether.

43.    On about August 2012, Mr. Ontiveros entered into a loan modification agreement regarding the first mortgage on his home, but never resumed making payments on the Second Mortgage.  At the time, Mr. Ontiveros assumed that the loan modification agreement "took care of" the Second Mortgage as well.

**CLASS ACTION COMPLAINT**

44.     In or around August 2012, Mr. Ontiveros received a document, indicating that the Second Mortgage had been "charged off" (hereinafter, the "Charge-off Document").

45.     Shortly, after entering into the modification agreement and receiving the Charge-off Document, Mr. Ontiveros stopped receiving monthly statements concerning the Second Mortgage.

46.     In reliance upon Defendants' representations in the Charge-off Document, and his independent understanding that the loan modification agreement he entered had "taken care of" the Second Mortgage, Mr. Ontiveros believed that, going forward, his monthly obligations for fees and finance charges were limited to those imposed by the modification agreement and were being satisfied by his new monthly mortgage payments.  The fact that Mr. Ontiveros did not receive a "notice of default" regarding the Second Mortgage bolstered his belief.

47.     For approximately five years Mr. Ontiveros did not receive any other correspondence regarding the Second Mortgage (the "Five-year Silence").

48.     On information and belief, on or about June 21, 2017, Countrywide, assigned the Second Mortgage to 2005 Residential.

49.     On information and belief, 2005 Residential engaged FCI as its servicer.

50.     On or about September 21, 2017, Mr. Ontiveros received from FCI, on behalf of 2005 Residential, two bills – one dated, August 21, 2017 and the other dated, September 21, 2017 – purporting to retroactively assess monthly late fees and finance charges covering the Five-year Silence, during which no monthly periodic statements were being sent to Mr. Ontiveros.  As a result of Defendants' unlawful inclusion of sums for unpaid late charges, past due interest, and fees that had purportedly accrued during the Five-year Silence, the bills overstated the balance due.

**CLASS ACTION COMPLAINT**

51.     A true and accurate copy of the bills sent by FCI, on behalf of 2005 Residential, in conjunction with this consumer credit transaction (the "FCI Bills"), are attached hereto as **Plaintiff's Exhibit C**, and by this reference is incorporated herein.

52.     Regulation Z required that Defendants send Mr. Ontiveros monthly statements for the accruing of interest.  Defendants were permitted to stop sending periodic statements only if the Second Mortgage had been "charged off" and Mr. Ontiveros was not being charged any additional fees or interest.  If, after ceasing their transmission of monthly statements, Defendants subsequently decided to stop treating the loan as charged-off or to charge any fees or interest, Defendants were required to resume providing statements and were prohibited from retroactively assessing fees or interest.  In light of Regulations Z's requirements, Defendants either:

    (a)     violated 15 U.S.C. § 1638 by failing to provide Mr. Ontiveros, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of 12 CFR section 1026.41, as required by TILA in connection with the Transaction.  For approximately five years Defendants did not send Mr. Ontiveros any periodic statements; or

    (b)     violated 15 U.S.C. § 1638by purporting to retroactively charge Mr. Ontiveros late fees and finance charges covering the period of time during which they were not sending Mr. Ontiveros any periodic statements and were conducting themselves as if the Second Mortgage had been "charged off"

53.     Mr. Ontiveros has been harmed by the actions and omissions of Defendants.  If Defendants would have sent the required periodic statements during the Five-year Silence Mr. Ontiveros would have actively paid down the accruing finance charges, relieving the financial pressure currently imposed thereby.  Mr.

**CLASS ACTION COMPLAINT**

1   Ontiveros would have also sought better terms, contested the interest and fees,

2   and/or sought clarification regarding the permissible fees applicable to a "charged

3   off" loan and would have successfully obtained the benefits resulting from those

4   alternative pursuits.

5      54.   §1788.17 of the RFDCPA mandates that every debt collector

6   collecting or attempting to collect a consumer debt shall comply with the provisions

7   of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in

8   Section 1692k of, Title 15 of the United States Code statutory regulations contained

9   within the FDCPA, 15 U.S.C. §1692d, and §1692d(5).

10     55.   Defendant's conduct violated the RFDCPA in multiple ways,

11  including but not limited to:

12          a. Using false, deceptive, or misleading representations or means in

13             connection with collection of a debt (15 U.S.C. § 1692e);

14          b. Falsely representing the character, amount, or legal status of

15             Plaintiff's debt (15 U.S.C. § 1692e(2)(A));

16          c. Using false representations and deceptive practices in connection

17             with collection of an alleged debt from Plaintiff (15 U.S.C. §

18             1692e(10);

19          d. Using unfair or unconscionable means against Plaintiff in

20             connection with an attempt to collect a debt (15 U.S.C. § 1692f);

21          e. Collecting an amount from Plaintiff that is not expressly authorized

22             by the agreement creating the debt (15 U.S.C. § 1692f(1));

23          f. Collecting an amount from Plaintiff that is not permitted by law (15

24             U.S.C. § 1692f(1));

25

26          **FACTS COMMON TO ALL MEMBERS OF THE CLASS**

27

28

**CLASS ACTION COMPLAINT**

56.    On information and belief, Defendants' normal business practice is to retroactively assess fees and interest charges for earlier billing cycles during which no periodic statement was sent to the borrower.

57.    On information and belief, Defendants sent Plaintiff the unlawful biling statement, and sent similarly unlawful billing statements to the other Class members, in accordance with this normal business practice.

58.    Defendants' retroactive assessments result in overstatements of the [amount/balance] consumers owe on their accounts.

59.    Many borrowers are unaware of the illegality of Defendants' retroactive assessments and are induced by Defendants to pay the overcharges without contest.

60.    Defendants' violations of TILA directly harm Class members by depriving them of the excess funds they expend on the illegal fees and interest charges.

61.    Rather than refund Class members' overpayments, Defendants retain the overpayments as ill-gotten gains.

62.    Defendants are sophisticated companies and are aware that their retroactive assessments are unlawful.  Defendants have concluded that the ill-gotten revenue they receive from borrowers who do not challenge the unlawful assessments sufficiently exceeds the potential costs Defendants might incur as a result of their unlawful activity.  Defendants have made a calculated business decision to systematically and routinely violate TILA and it has become their normal business practice.

## **CLASS ACTION ALLEGATIONS**

63.    Mr. Ontiveros brings this action pursuant to Federal Rule of Civil Procedure, Rule 23; and 15 U.S.C. § 1640(a)  on behalf of himself and the Class.

64.    Mr. Ontiveros represents, and is a member of the Class, consisting of all persons within the United States who: (1) received a billing statement from

**CLASS ACTION COMPLAINT**

1    Defendants or their agents that purported to retroactively charge late fees and

2    finance charges covering a period during which the subject mortgage loan was

3    "charged off" and/or Defendants were not sending periodic statements to the

4    borrower; and/or (2) were not sent a periodic statement by Defendants for any

5    billing cycle, within one year prior to the filing of the Complaint through the date of

6    final approval, during which Defendants charged the person late fees or finance

7    charges within four year prior to the filing of the Complaint through the date of

8    final approval.

9         65.    The following people are excluded from the Class: (1) any Judge or

10   Magistrate presiding over this action and members of their family; (2) Defendants,

11   Defendants' subsidiaries, parents, successors, predecessors, and any entity in which

12   Defendants or their parents have a controlling interest and its current or former

13   employees, officers and directors; (3) persons who properly executre and file a

14   timely request for exclusion from the Class; (4) persons whose claims in this matter

15   have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

16   counsel and Defendants' counsel; and (6) the legal representatives, successors and

17   assigns of any such excluded persons.

18        66.    Mr. Ontiveros does not know the exact number of members in the

19   Class, but believes the Class members number in the [hundreds of thousands], if not

20   more.   Thus, this matter should be certified as a class action to assist in the

21   expeditious litigation of this matter.

22        67.    Mr. Ontiveros and members of the Class were harmed by Defendants'

23   acts and omissions in at least the following ways: (1) Defendants, either directly or

24   through their agents, unlawfully failed to send Mr. Ontiveros and the Class

25   members required periodic mortgage statements, thereby depriving Mr. Ontiveros

26   and the Class members of certain information that important and/or necessary to

27   making proper financial decisions in the ownership of their home; and/or (2)

28   Defendants, either directly or through their agents, unlawfully charged Mr.

**CLASS ACTION COMPLAINT**

1  Ontiveros and the Class members late fees and finance charges that were assessed
2  retroactively to cover periods during which Defendants did not send required
3  periodic statements, thereby understating the balance due.  Mr. Ontiveros and the
4  Class members were damaged thereby.

5      68.    This suit seeks only damages and injunctive relief for recovery of
6  economic injury on behalf of the Class and it expressly is not intended to request
7  any recovery for personal injury and claims related hereto. Plaintiff reserves the
8  right to expand the Class definition to seek recovery on behalf of additional persons
9  as warranted as facts are learned in further investigation and discovery.

10     69.    There is a well-defined community of interest in the questions of law
11 and fact involved affecting the parties to be represented.  The factual and legal
12 issues common to the entire class predominate over the factual and legal issues that
13 may affect individual members of the class.  Examples of common questions:

14          (a)    Whether, within a year prior to the filing of this Complaint
15                 through the date of final approval, Defendants or their agents failed to
16                 send a Class member the required periodic statement for any billing
17                 cycle during which Defenants charged the Class member late fees or
18                 finance charges;

19          (b)    Whether, within a year prior to the filing of this Complaint
20                 through the date of final approval, Defendants or their agents sent a
21                 Class member a billng statement that purported to retroactively charge
22                 late fees and finance charges for a period during which the subject
23                 mortgage loan was "charged off" and/or Defendants did not send the
24                 Class member a required periodic statement;

25          (c)    Whether, in the ordinary course of their business, Defendants or
26                 their agents (1) regularly extended or offered to extend consumer
27                 credit for which a finance charge is or may be imposed or which, by
28                 written agreement, is payable in more than four installments or (2)

**CLASS ACTION COMPLAINT**

purported to be an entity entitled to receive a scheduled periodic mortage payment from a Class member and responsible for making the payment to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts due from the Class member pursuant to the terms of the mortgage;

(d)     Whether Mr. Ontiveros and the Class members were damaged by Defendants' alleged violations of TILA, and the extent of damages for such violations;

(e)     Whether Defendants and their agents should be enjoined from engaging in such conduct in the future

70.     As a person that was not sent a periodic statement by Defendants for approximately five years and then received a billing statement that purported to retroactively charge late fees and finance charges for that five-year period, Mr. Ontiveros is asserting claims that are typical of the Class.  Mr. Ontiveros can fairly and adequately represent and protect the members of the Class.  Mr. Ontiveros is committed to the vigorous prosecution of this action.  Mr. Ontiveros has no interest that is antagonistic to the Class or any member of the Class.  Defendants do not have any defenses that are unique to Mr. Ontiveros.  Mr. Ontiveros has retained counsel competent and experienced in class action litigation and in the prosecution of TILA claims.

71.     This putative class action is appropriate for certification because a class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Class-wide damages are essential to induce Defendants to comply with TILA.  The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of TILA are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' acts

**CLASS ACTION COMPLAINT**

and omissions.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

72.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1601 (Against All Defendants)

73.    Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

74.    The Plaintiff's loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b). Defendants do not qualify for the exception for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700. Defendantsare subject to Truth in Lending, Regulation Z.

75.    The Act provides for civil liability against creditors and, in limited circumstances, assignees of creditors. 15 U.S.C. § 1640(a) ("Section 1640"), which is entitled "civil liability," provides a private right of action for damages against "any creditor who fails to comply with" the Act's requirements for credit transactions.

**CLASS ACTION COMPLAINT**

76. Section 1641(e) governs assignee liability under TILA for violations involving "a consumer credit transaction secured by real property." That section extends creditor liability to assignees if the violation "is apparent on the face of the disclosure statement provided in connection with such transaction." Pursuant to Section 1640(e)(2), a violation is apparent on the face of the disclosure statement if "(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this subchapter."

77. Section 1026.41(a)(2) requires servicers such as Defendants send monthly statements for the accruing of interest, stating, in pertinent part: "A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section."

78. Section 1026.41(e)(6) governs the cessation and resumption of the transmission of period billing statements concerning "charged off" loans and states as follows:

(6)    Charged-off loans.

(i) A servicer is exempt from the requirements of this section for a mortgage loan if the servicer:

(A) Has charged off the loan in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; and

(B) Provides, within 30 days of charge-off or the most recent periodic statement, a periodic statement, clearly and conspicuously labeled "Suspension of Statements & Notice of Charge Off - Retain This Copy for Your Records." The

18

**CLASS ACTION COMPLAINT**

periodic statement must clearly and conspicuously explain that, as applicable, the mortgage loan has been charged off and the servicer will not charge any additional fees or interest on the account; the servicer will no longer provide the consumer a periodic statement for each billing cycle; the lien on the property remains in place and the consumer remains liable for the mortgage loan obligation and any obligations arising from or related to the property, which may include property taxes; the consumer may be required to pay the balance on the account in the future, for example, upon sale of the property; the balance on the account is not being canceled or forgiven; and the loan may be purchased, assigned, or transferred.

(ii)   Resuming compliance.

(A) If a servicer fails at any time to treat a mortgage loan that is exempt under paragraph (e)(6)(i) of this section as charged off or charges any additional fees or interest on the account, the obligation to provide a periodic statement pursuant to this section resumes.

(B) Prohibition on retroactive fees. A servicer may not retroactively assess fees or interest on the account for the period of time during which the exemption in paragraph (e)(6)(i) of this section applied.

**CLASS ACTION COMPLAINT**

79.   TILA expressly prohibits Defendants from retroactively assessing fees and interest charges on mortgage loans for periods during which the borrower was not being sent periodic statements: "Prohibition on retroactive fees. A servicer may not retroactively assess fees or interest on the account for the period of time during which the exemption in paragraph (e)(6)(i) of this section applied." 12 CFR § 1026.41.

80.   In the course of the respective consumer credit transactions at issue in this case, Defendants violated 15 U.S.C. § 1638(f) and Regulation Z § 1026.41(a)(2) and/or (e)(6)(ii)(B) by failing to provide Mr. Ontiveros and the Class members, for each billing cycle, a periodic statement meeting the requirements set forth in Section 1026.41.

81.   In the course of the respective consumer credit transactions at issue in this case, Defendants also violated Regulation Z § 1026.41 (e)(6)(ii)(B) by purporting to retroactively charge Mr. Ontiveros and the Class members late fees and finance charges covering periods of time during which they did not send Mr. Ontiveros and the Class members any periodic statements.

82.   Plaintiff's claims state:

    a.   A valid injury in fact;

    b.   Which is traceable to the conduct of Defendant; and

    c.   Is likely to be redressed by a favorable judicial decision.

83.   In the present case, Plaintiff's Prayers for Relief include request for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and 15 U.S.C. §1640(a)(2)(iv).   The statutory damages set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

84.   Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged unlawful practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent future injury in the future.

**CLASS ACTION COMPLAINT**

85.     Plaintiff and members of the Class suffered a concrete injury in fact, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

86.     As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1638(f), 1640(a), and 1641(e), Defendants are liable to Plaintiff and the Class Members for:

      a.     Statutory damages of $4,000 for each periodic statement violations;

      b.     Actual damages in an amount to be determined at trial;

      c.     A reasonable attorney fee;

      d      Costs of the litigation and reasonable attorney's fees; and

      e.     Any other remedy this Honorable Court deems appropriate.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1601 (Against All Defendants)

87.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

88.     To the extent that Defendant's actions, counted above, violated the RFDCPA, those actions were done knowingly and willfully.

89.     As a result of the aforesaid violations of the RFDCPA, Defendants are liable to Plaintiff and the Class Members for:

      a.  Actual damages;

      b.  Statutory damages for willful and negligent violations;

      c.  Costs of the litigation and reasonable attorney's fees; and,

      d.  Any other remedy this Honorable Court deems appropriate.

## PRAYER FOR RELIEF

**CLASS ACTION COMPLAINT**

WHEREFORE, Plaintiff requests entry of judgment in his favor and in favor of the Class members against Defendants as follows:

1.    For an order certifying the Class and appointing Plaintiff as Class Representative;

2.    For an order certifying the undersigned counsel as Class Counsel;

3.    For an order required Defendants, at their own cost, to notify all Class Members of the unlawful conduct herein;

4.    For statutory damages pursuant to 15 U.S.C. §1640 (a)(1), (2)(iv), according to proof, but not less than $400.00 for violations of TILA;

5.    For any award to Plaintiffs of the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees, costs and expenses pursuant to 15 U.S.C. § 1692k(a)(3);

6.    For all other relief at law or in equity that Plaintiffs are entitled to by law that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

DATED:  January 16, 2019        LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: /s/Todd M. Friedman
Todd M. Friedman, Esq.
*Attorneys for Plaintiff and the putative class*

**CLASS ACTION COMPLAINT**